UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BIVINS,<br><br>        Plaintiff,<br><br>   v.<br><br>DR. JEU,[1]<br><br>        Defendant. | No. 2:16-cv-0389 MCE KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

I. Introduction

    Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. Defendant's motion for summary judgment is before the court. As discussed below, defendant's motion should be granted on the grounds that plaintiff failed to exhaust administrative remedies as to his claims against Dr. Jeu, and plaintiff should be granted an opportunity to file an amended complaint as to Dr. Borges.

II. Background

    Plaintiff contends that on November 17, 2015, Dr. Jeu refused to provide plaintiff with Hepatitis C treatment, stating: "all inmates can't be treated for Hepatitis C because it costs too

////

---

[1] Dr. Jeu was named as "Dr. Ju" in plaintiff's complaint. Defendants P. Sahota, and L.D. Zamora were previously dismissed from this action. (ECF No. 17.)

1

much, and even if [plaintiff] were on the streets, you wouldn't receive treatment anyway because you wouldn't be able to afford it." (ECF No. 1 at 3.)

On December 22, 2017, defendant filed a motion for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies.

On December 29, 2017, plaintiff filed a three-page opposition which was not signed. On January 22, 2018, plaintiff filed a motion for extension of time to file and serve an opposition to the motion for summary judgment. In the meantime, on January 25, 2018, plaintiff filed a second opposition to the motion for summary judgment, which included his 12-page opposition and numerous exhibits. Plaintiff was advised that he is allowed to file one opposition, but because his second opposition was signed, his prior opposition was stricken, and the court would consider his second opposition. (ECF No. 46.) Defendant was granted an extension of time to file a reply. No reply was filed.[2]

III. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing

---

[2] On February 14, 2018, plaintiff filed a 38 page document entitled "Amended Opposition." (ECF No. 47.) However, plaintiff did not seek leave to file an amended opposition, and fails to explain why he needed to amend his opposition. Because plaintiff already filed two oppositions, and the court previously warned him that he could only file one opposition, the undersigned declines to address plaintiff's unauthorized "amended opposition." The undersigned has reviewed the filing, however, and determined it would not change the recommended outcome.

2

Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on December 22, 2017 (ECF No. 38-3), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

IV. Undisputed Facts[3]

1. Plaintiff is a prisoner who has been in the custody of the California Department of Corrections and Rehabilitation ("CDCR") since 1975.

2. Plaintiff transferred to Folsom State Prison ("FSP") in May of 2015, and that is where the allegations in the complaint arose. (ECF No. 1.)

////

---

[3] For purposes of summary judgment, the undersigned finds these facts are undisputed, unless otherwise indicated.

4

3. Defendant Dr. Jeu was employed as a medical doctor by the CDCR at the time of the allegations in the complaint.

4. Plaintiff has had Hepatitis C for over twenty years. (ECF No. 1 at 3.)

5. On November 17, 2015, plaintiff requested that Dr. Jeu prescribe plaintiff the Hepatitis C medication Harvoni.

6. In response, plaintiff claims that Dr. Jeu told plaintiff that all inmates can't be treated for Hepatitis C because it is too expensive, and plaintiff would be unable to afford the treatment if he were on the streets. (ECF No. 1 at 3.)

7. Before November of 2015, plaintiff had no problem with Dr. Jeu. (Bivins' Dep. at 28.)

8. The allegations in the complaint are related only to November of 2015. (Bivins' Dep. at 31.)

9. Following screening, this case proceeds on plaintiff's claim that Dr. Jeu acted with deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment. (ECF No. 9 at 7.)

10. Plaintiff knows what a 602 appeal is, and is familiar with the inmate appeals process and the corresponding three levels of review. (Bivins' Dep. at 31-33.)

11. Plaintiff understands that in order to exhaust an inmate appeal, he must pursue it through the third level of review. (Bivins' Dep. at 32.)

12. Plaintiff understands that he must first pursue his appeal through the third level of review before he files a lawsuit. (Bivins' Dep. at 34.)

13. Plaintiff alleges he exhausted his claim against Dr. Jeu by filing appeal FSP HC 16016123. (Bivins' Dep. at 35, 48.)

14. In appeal FSP HC 16016123, plaintiff complained that Dr. Jeu denied plaintiff Hepatitis C treatment. (ECF No. 39-3 at 4.)

15. Plaintiff also complained that Dr. Jeu told plaintiff that all inmates can't be treated for Hepatitis C because it is too expensive, and that if plaintiff were not a prisoner, he would not get treatment because he could not afford it. (ECF No. 39-3 at 4-6.)

////

16. Plaintiff submitted appeal FSP HC 16016123 to the first level review on February 2, 2016. (Bivins' Dep. at 41; ECF No. 39-3 at 4.)

17. Plaintiff filed the instant lawsuit on February 23, 2016, and this action proceeds on his original complaint.[4]

18. On March 2, 2016, a first level response issued in appeal FSP HC 16016123. (Bivins' Dep. at 41; ECF No. 39-3 at 8-9.)

19. On March 22, 2016, plaintiff submitted appeal FSP HC 16016123 to the second level of review. (Bivins' Dep. at 42-43; ECF No. 39-3 at 5.)

20. On April 25, 2016, a second level response issued in appeal FSP HC 16016123. (Bivins' Dep. at 43; ECF No. 39-3 at 10-12.)

21. On May 20, 2016, plaintiff submitted appeal FSP HC 16016123 to the third level review. (Bivins' Dep. at 45; ECF No. 39-3 at 7.)

22. On August 18, 2016, the third level response issued in appeal FSP HC 16016123. (Bivins' Dep. at 46; ECF No. 39-3 at 2-3.)

23. There are no other appeals that plaintiff claims exhausted his allegations against Dr. Jeu. (Bivins' Dep. at 48.)

24. Plaintiff exhausted appeal FSP HC 15015865 on December 21, 2015, before filing the instant lawsuit, but plaintiff's allegations were based on incidents in June of 2015, and were against defendants previously dismissed from this action.[5] (ECF Nos. 9 & 15; 39-3 at 149-58.)

V. Exhaustion of Administrative Remedies

A. Exhaustion Standards

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), requires a prisoner challenging prison conditions to exhaust available administrative remedies before filing suit. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); 42 U.S.C. § 1997e(a) ("No action

---

[4] On October 21, 2016, plaintiff was granted the option of filing an amended complaint (ECF No. 9), but he did not file one.

[5] In appeal FSP HC 15015865, plaintiff challenged the "policy that is used to deny adequate 'Hep C' treatment," and only identifying Dr. Borges in the initial appeal. (ECF No. 39-3 at 151; 153.)

shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion is a precondition to suit; exhaustion during the pendency of the litigation is insufficient. McKinney, 311 F.3d at 1199-1200.5. This requirement promotes the PLRA's goal of efficiency by: "(1) 'giv[ing] prisoners an effective incentive to make full use of the prison grievance process'; (2) reducing prisoner suits as some prisoners are 'persuaded by the proceedings not to file an action in federal court'; and (3) improving the quality of any remaining prisoner suits 'because proper exhaustion often results in the creation of an administrative record that is helpful to the court.'" Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (quoting Woodford v. Ngo, 548 U.S. 81, 94-95 (2006)).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. These rules are defined by the prison grievance process itself, not by the PLRA. Jones v. Bock, 549 U.S. 199, 218 (2007). "[A] prisoner must 'complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court.'" Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010) (quoting Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009)). In California, a grievance must be timely appealed through the third level of review to complete the administrative review process. Harvey, 605 F.3d at 683; Cal. Code Regs. tit. 15, § 3084.1(b). The State of California provides its inmates and parolees the right to administratively appeal "'any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare.'" Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his designee. Id. § 3084.1(b), § 3084.7(d)(3).

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones, 549 U.S. at 218; see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations"). California prisoners

are required to lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC form for a health-care matter). The level of specificity required in the appeal is described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4).[6] An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

An inmate must exhaust available remedies, but is not required to exhaust unavailable remedies. Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" Id. (quoting Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005)). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

---

[6] California prison regulations governing inmate grievances were revised on January 28, 2011,. Cal. Code Regs. tit. 15, § 3084.7. Several Ninth Circuit cases refer to California prisoners' grievance procedures as not specifying the level of detail necessary and instead requiring only that the grievance ''describe the problem and the action requested.'' See Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Cal. Code Regs. tit. 15, § 3084.2); Sapp, 623 F.3d at 824 (''California regulations require only that an inmate 'describe the problem and the action requested.' Cal. Code Regs. tit. 15, § 3084.2(a)''); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (when prison or jail's procedures do not specify the requisite level of detail, '''a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought'''). Such cases are distinguishable because they did not address the regulation as it existed at the time of the events complained of in plaintiff's complaint. Whatever the former requirements may have been, in California since January 28, 2011, the operative regulation set forth above requires specificity in administrative appeals.

8

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." Jones, 549 U.S. at 204. It is the defendant's burden to prove that there was an available administrative remedy, and that the prisoner failed to exhaust that remedy. Albino, 747 F.3d at 1172. In most circumstances, the appropriate procedural mechanism is a motion for summary judgment under Federal Rule of Civil Procedure 56, with the defendant attaching the evidence necessary to demonstrate a failure to exhaust. Albino, 747 F.3d at 1166.

B. Discussion

Initially, the undersigned notes that plaintiff spends much of his opposition arguing the merits of his claims. However, the instant motion is not based on the merits of plaintiff's suit; rather, resolution of this motion hinges on whether plaintiff can demonstrate that he exhausted his claims against Dr. Jeu prior to filing the instant action, and, if not, whether plaintiff can be excused from the exhaustion requirement. Also, plaintiff argues that the court should not ignore the overwhelming evidence of 602 grievances filed by plaintiff. (ECF No. 45 at 2.) However, plaintiff provided copies of numerous health care appeals that are unrelated to his claims against Dr. Jeu. (See e.g., ECF No. 45 at 64-65; 68-77; 80-88; 94-97; 100; 103-06; 113; 124-34; 138-39; 143-44; 146.) Such appeals are not relevant to the question of whether plaintiff exhausted his claims against Dr. Jeu prior to filing the instant action, particularly where the appeal was first submitted after the instant lawsuit was filed. (See e.g., ECF No. 45 at 80, submitted February 3, 2017; at 94, submitted July 6, 2016; at 103 submitted March 24, 2016.) The cancellation and rejection of such unrelated appeals is also not relevant to the exhaustion question at issue here.

1. Did plaintiff exhaust?

It is undisputed that (a) CDCR has a grievance process; and (b) plaintiff did not receive a third level review on the merits of his claim against Dr. Jeu until August 18, 2016, after he filed the instant action on February 23, 2016. Such undisputed facts establish that plaintiff did not exhaust his administrative remedies prior to filing this action. Thus, the burden shifts to plaintiff to come forward with evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172.

### 2. Were the remedies available?

The Supreme Court recently reiterated that "all inmates must now exhaust all available remedies," and district courts must apply this statutory requirement. Ross, 136 S. Ct. at 1858. Therefore, there is no "special circumstances" exception to the PLRA's rule of exhaustion. Id. That said, the PLRA does provide one textual exception by its use of the term "available," meaning "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" Id., quoting Booth, 532 U.S. at 737-38. In Ross, the Supreme Court found "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 136 S. Ct. at 1858-59. These circumstances include: "(1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting Ross, 136 S. Ct. at 1858-59). However, "we expect that these circumstances will not often arise." Ross, 136 S. Ct. at 1859 (citation omitted).

The Ninth Circuit characterized the list in Ross as "non-exhaustive." Andres, 867 F.3d at 1078. Various other circumstances render administrative remedies unavailable, including the failure of prison officials to properly process a prisoner's grievance. Id. at 1079. See also Sapp, 623 F.3d at 823 (when an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as unavailable); Nunez, 591 F.3d at 1224-26 (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown v. Valoff, 422 F.3d at 940 (prisoner not required to proceed to third level where appeal granted at second level and no further relief was available).

Here, the record reflects that administrative remedies were available at FSP because plaintiff filed two different appeals which he pursued through the third levels of review. None of the cancellation or rejection forms provided by plaintiff pertained to his claims against Dr. Jeu;

10

indeed, it appears from the processing of appeal FSP HC 16016123, that plaintiff's appeal was processed without issue.

### 3. Did Appeal FSP HC 15015865 Exhaust Remedies as to Dr. Jeu?

Further, plaintiff argues that courts have found that a general grievance complaining about inadequate medical care may satisfy the exhaustion requirement. But plaintiff relies on cases decided prior to 2011 (ECF No. 45 at 3-4), when the CDCR amended its regulations governing the exhaustion process to require a certain level of specificity, as set forth above.

In addition, plaintiff provided a copy of appeal FSP HC 15015865, which also involved the denial of treatment for Hepatitis C, and which was exhausted on December 21, 2015. However, in such appeal, plaintiff challenged the "policy that is used to deny adequate 'Hep C' treatment." (ECF No. 39-3 at 151.) Plaintiff claimed that on June 4, 2015, he went to medical seeking Harvoni, but Dr. Borges told plaintiff that there is a policy that prevents Dr. Borges from recommending such treatment until plaintiff "starts to die" from the effects of Hepatitis C, such as inflamed liver, clotting, cancer, etc. (ECF No. 39-3 at 151, 153.) In his request for third level review, plaintiff claimed his life was being placed in danger by Dr. Kimura-Yip, Dr. Sahota, and Dr. Borges by denying plaintiff Harvoni, a decision which plaintiff claims only a Hepatitis C specialist is qualified to deny. (ECF No. 39-3 at 152.) The third level response primarily addressed plaintiff's policy questions, did not address Dr. Borges or any other doctor by name, and reiterated that plaintiff did "not meet the criteria for HCV treatment . . . based on the CCHCS HCV care guidelines." (ECF No. 39-3 at 149-50.)

In the instant complaint, plaintiff alleges that Dr. Jeu denied plaintiff Harvoni based on plaintiff's poverty and race, and such allegations are based on statements plaintiff alleges Dr. Jeu made to plaintiff on November 14, 2015. Therefore, plaintiff's allegations as to Dr. Jeu occurred after the allegations raised in appeal FSP HC 15015865, and could not have been considered in connection therewith. Moreover, in addition to not naming Dr. Jeu in appeal FSP HC 15015865 as required under 2011 regulations, plaintiff failed to include any factual allegations alerting prison officials to alleged wrongful actions by Dr. Jeu. Finally, plaintiff did file a separate appeal addressing his allegations against Dr. Jeu in appeal 16016123; however, such appeal was not

exhausted until after plaintiff filed the instant action on February 23, 2016. For all of these reasons, the undersigned cannot find that appeal FSP HC 15015865 exhausted administrative remedies as to plaintiff's claims against defendant Dr. Jeu.

### 4. Leave to Amend?

Plaintiff's original complaint named Dr. Sahota and Dr. Zamora as defendants. However, as the screening order noted, plaintiff included no charging allegations as to Dr. Zamora, and the only allegation as to Dr. Sahota was that Dr. Sahota upheld an administrative appeal decision. (ECF No. 9 at 3.) Neither of these doctors were named in appeal FSP HC 15015865, so it appears likely that any claims against them would also be unexhausted. Moreover, on October 21, 2016, plaintiff was granted leave to file an amended complaint as to his claims against Dr. Sahota and Dr. Zamora, but plaintiff chose not to file one, and both defendants were dismissed without prejudice. (ECF No. 17.)

In the original complaint, plaintiff also referred to the date of June 4, 2015, discussed Dr. Borges, and mentioned Dr. Kimura-Yip, but plaintiff did not name either doctor as a defendant herein. (ECF No. 1 at 3.) Because plaintiff did not include Dr. Kimura-Yip or any factual allegations as to Dr. Kimura-Yip in his initial appeal FSP HC 15015865, it appears unlikely plaintiff has exhausted his administrative remedies as to Dr. Kimura-Yip. While it appears plaintiff did name Dr. Borges in appeal FSP HC 15015865, it is unclear whether plaintiff can state a cognizable Eighth Amendment claim against Dr. Borges. Nevertheless, in an abundance of caution, plaintiff should be granted leave to file an amended complaint against Dr. Borges, provided plaintiff can allege facts, in good faith, demonstrating that Dr. Borges was deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights by Dr. Borges. See, e.g., West v. Atkins, 487 U.S. 42, 48 (1988). Also, the complaint must allege in specific terms how Dr. Borges was involved. Rizzo v. Goode, 423 U.S. 362, 371 (1976). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo, 423 U.S. at 371; May v.

12

Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of the defendant must be sufficiently alleged. Failure to file an amended complaint consistent with this order will result in the dismissal of this action.

Plaintiff may not change the nature of this suit by alleging new, unrelated claims.[7] See Fed. R. Civ. P. 20(a)(2).

Plaintiff is not required to append exhibits to any amended complaint.

VI. Conclusion

The undersigned finds that plaintiff failed to exhaust his administrative remedies as to his claims against Dr. Jeu prior to filing the instant action, and recommends that the pending motion be granted. Under the PLRA, plaintiff's failure to pursue and exhaust his administrative remedies

////

---

[7] A plaintiff may properly assert multiple claims against a single defendant. Fed. Rule Civ. P. 18. In addition, a plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Unrelated claims against different defendants must be pursued in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees -- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George, 507 F.3d at 607.

13

requires dismissal of Dr. Jeu without prejudice.  In addition, plaintiff should be granted leave to file an amended complaint against Dr. Borges, as discussed above.

Accordingly, IT IS HEREBY ORDERED that the undersigned declines to address plaintiff's unauthorized "amended opposition."  See n.2 *supra*.

IT IS RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 38) be granted;

2. Dr. Jeu be dismissed from this action without prejudice; and

3. Within thirty days from the date of any order by the district court adopting these findings and recommendations, plaintiff may file an amended complaint against Dr. Borges.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 14, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/bivi0389.msj.fte