UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BIVINS,<br><br>               Plaintiff,<br><br>   v.<br><br>DR. JEU, et al.,<br><br>               Defendants. | No. 2:16-cv-0389 MCE KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. Defendant Borges' motion for summary judgment is before the court.[1] As discussed below, defendant Borges' motion should be granted.

II. Plaintiff's Allegations

In his second amended complaint (ECF No. 52), plaintiff alleges that Dr. Borges was deliberately indifferent to plaintiff's serious medical needs by denying plaintiff Harvoni medication treatment for Hepatitis C virus, by applying guidelines and criteria not applicable to Harvoni, and by relying on outdated criteria to find plaintiff should only receive interferon, which plaintiff alleges is known to cause complications in African Americans.

---

[1] By order filed July 19, 2018, Dr. Jeu was dismissed from this action without prejudice, and plaintiff was granted leave to file an amended complaint against Dr. Borges.

III. <u>Undisputed Facts</u>[2] ("UDF")

1. Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") who was incarcerated at Folsom State Prison, California at all times relevant to this lawsuit.

2. Plaintiff was born in 1953 and is currently 66 years old. (ECF No. 71-3 at 40 (McCaslin Decl.).)

3. Plaintiff has been incarcerated in CDCR custody since 1975. (Pl.'s Dep. 13-14.)

4. In his deposition, plaintiff confirmed that the instant allegations relate only to November of 2015. (Pl.'s Dep. 25, 31.)

5. Defendant Dr. Borges is a licensed physician employed by the CDCR at Folsom State Prison since 2001. (ECF No. 71-5 at 1-2 (Dr. Borges Decl.).)

6. On May 21, 2015, plaintiff completed a CDC 7362 Health Services Request Form requesting to have a liver biopsy and to treat his HCV condition with Harvoni. (ECF Nos. 71-3 at 37; 71-4 at 3 (Dr. Feinberg Decl.); 71-5 at 2.)

7. Plaintiff has had Hepatitis C for twenty years. (ECF No. 78 at 3.)

8. Harvoni is a direct-acting antiviral agent that treats the Hepatitis C Virus ("HCV"). (ECF Nos. 71-4 at 3; 71-5 at 2.)

9. Plaintiff was seen by defendant Borges on June 4, 2015. (ECF Nos. 71-4 at 3; 71-5 at 2.) At this visit, the Primary Care Provider Progress Note indicates plaintiff's FIB 4 score[3] was 1.37. Based on California Correctional Health Care Services ("CCHCS") Care Guide: Hepatitis C, treatment for plaintiff's HCV was deferred. (ECF No. 71-3 at 8.)

////

---

[2] For purposes of summary judgment, the undersigned finds these facts are undisputed following review of ECF document numbers 28-2, 29, 30-1 and 30-2 and documents referenced therein. Where plaintiff has failed to properly address defendants' assertion of fact as required, the undersigned considers the fact undisputed. <u>See</u> Fed. R. Civ. Pro. 56(e)(2).

[3] FIB 4 scoring estimates the likelihood of liver fibrosis in the patient. A FIB 4 score of less than 1.45 predicts it is unlikely the patient will have significant fibrosis. (ECF No. 71-4 at 3 (Decl. of Dr. Feinberg.)

2

10. On June 4, 2015, defendant Borges prescribed to plaintiff the following medications: (1) hydrocortisone topical cream (for rash); and (2) hydroxyzine (for itching). (ECF Nos. 71-3 at 40; 71-4 at 3; 71-5 at 2.)

11. Plaintiff was seen by defendant Borges on June 25, 2015. At this visit, the Primary Care Provider Progress Note indicates plaintiff's FIB 4 score was 1.37. Based on CCHCS Care Guide: Hepatitis C, treatment for plaintiff's HCV was deferred. (ECF Nos. 71-3 at 40; 71-4 at 3; 71-5 at 2.)

12. Plaintiff treated with Dr. M. Jeu, M.D. on November 10, 2015, and was prescribed TAC (triamcinolone acetonide) topical cream for a rash. (ECF Nos. 71-3 at 46-51; 71-4 at 3; 71-5 at 3.)

13. Plaintiff treated with Dr. M. Jeu, M.D. on November 17, 2015, with the medical record noting in the History of Present Illness ("HPI") section,

> 62 y/o male with HCV Infection and Chronic LBP (low back pain) is here for CCP f/u. He argued with me on the subject of hepatitis C treatment. Dr. Borges told him that he is not qualify for the treatment. He has an issue with this. He did not stay for the exam & walked out.

(ECF No. 71-3 at 57; see also ECF Nos. 71-4 at 3; 71-5 at 3.)

14. Aside from the reference to Dr. Borges recorded in the HPI section on November 17, 2015, that, "Dr. Borges told him that he is not qualify for the treatment," there is no reference to Dr. Borges treating plaintiff in the medical records after June 4, 2015, to the present. (ECF Nos. 71-3 at 54-59; 71-4 at 4; 71-5 at 3.)

15. California Correctional Health Care Services ("CCHCS") mandates treatment protocols for HCV at CDCR medical facilities through the CCHCS Care Guide: Hepatitis C. (ECF Nos. 33 at 12-28; 71-3 at 4-35; 71-4 at 4; 71-5 at 3.)

16. The treatment protocol from June 2015 to November 2015 for an HCV patient with a FIB 4 score of less than 1.45 was to defer treatment and clinically reassess annually. (ECF Nos. 33 at 12-28; 71-3 at 4-35; 71-4 at 4; 71-5 at 3.)

17. Defendant Borges is mandated by CCHCS to treat plaintiff according to the CCHCS Care Guide: Hepatitis C. (ECF Nos. 33 at 12-28; 71-3 at 4-35; 71-4 at 4; 71-5 at 3.)

18. Defendant Borges was mandated to follow CCHCS protocols, including the CCHCS Care Guide: Hepatitis C, when he treated plaintiff on June 4, 2015, and June 25, 2015. (ECF Nos. 33 at 12-28; 71-3 at 4-35; 71-4 at 4; 71-5 at 3.)

19. Defendant Borges followed CCHCS protocols when he treated plaintiff's HCV on June 4, 2015, by deferring treatment based on plaintiff's FIB 4 score being 1.37. (ECF Nos. 33 at 12-28; 71-3 at 4-35; 71-4 at 4; 71-5 at 3.)

20. FIB 4 scoring measures the likelihood of liver fibrosis in the patient. A FIB 4 score of less than 1.45 predicts it is unlikely the patient will have significant fibrosis. (ECF Nos. 33 at 12-28; 71-3 at 4-35; 71-4 at 4; 71-5 at 2.)

21. Based on plaintiff's FIB 4 score of 1.37, treatment with Harvoni would not be indicated based on CCHCS protocols in the CCHCS Care Guide: Hepatitis C. (ECF Nos. 33 at 12-28; 71-3 at 4-35; 71-4 at 4; 71-5 at 2.)

22. In reviewing plaintiff's pertinent medical records for the period of time from May 2015 to February 2016, plaintiff was not prescribed interferon, or any other medication of a similar nature to interferon. (ECF Nos. 71-4 at 4; 71-5 at 3.)

23. Defendant Borges did not prescribe interferon, or any similar medication, in the period from May 2015 to February 2016. (ECF Nos. 71-4 at 5; 71-5 at 4.)

IV. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

[4] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notice filed October 21, 2019 (ECF No. 71-6), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

V. Legal Standard for Eighth Amendment Claim

The Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To state a claim a plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the

defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett, 439 F.3d at 1096). "Deliberate indifference is a high legal standard," Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted).

"Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

Further, "[a] difference of opinion between a physician and the prisoner -- or between medical professionals -- concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)). Rather, a plaintiff is required to show that the course of treatment selected was "medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health." Snow, 681 F.3d at 988 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)). In other words, so long as a defendant decides on a medically acceptable course of treatment, his actions will not be considered deliberately indifferent even if an alternative course of treatment was available. Id.

VI. Discussion

Initially, the court acknowledges that in his deposition, plaintiff confirmed that his claim against Dr. Borges was limited to the November 2015 time frame, and Dr. Feinberg declares that in plaintiff's medical records, "there is no reference to Dr. Borges treating plaintiff . . . after June 25, 2015, to the present." (ECF No. 71-4 at 4.) However, because plaintiff is proceeding pro se, the court evaluates his claims based on Dr. Borges' earlier decision to defer treatment for plaintiff's HCV.

Defendant has moved for summary judgment and met his initial burden to show no genuine dispute as to any material fact exists. See Celotex Corp., 477 U.S. at 323. Specifically,

defendant adduced evidence, including copies of the applicable CCHCS protocols, that following such protocols, treatment for plaintiff's HCV on June 4, 2015, was deferred based on plaintiff's FIB 4 score of 1.37. In addition, Dr. Borges supported his motion with the declaration of Dr. Feinberg, Chief Medical Consultant, who opined that plaintiff's "FIB 4 score called for deferred treatment and annual reassessment, rather than Harvoni, at that time;" "Dr. Borges followed the medical best practices contained within the CCHCS Care Guide: Hepatitis C when treating Plaintiff's HCV in June of 2015;" and Dr. Borges "did not utilize outdated criteria," but rather "followed the guidelines located in the CCHCS Care Guide: Hepatitis C when treating Plaintiff's HCV." (ECF No. 71-4 at 5.) Hence, the burden shifts to plaintiff to establish that a genuine issue of material fact actually exists. See Matsushita Elec. Indus. Co., 475 U.S. at 586.

The undersigned finds that plaintiff failed to meet his burden on summary judgment because he has not tendered evidence in the form of affidavits to support his contention that defendant acted with deliberate indifference in deferring treatment for plaintiff's HCV.[5] Plaintiff adduced no competent evidence in rebuttal; rather, plaintiff generally claims he did not receive medical treatment for HCV. But plaintiff offers no competent medical evidence to support his claim that he should have received Harvoni or any other medical treatment for HCV in 2015. Rather, it appears plaintiff has a difference of opinion with Dr. Borges as to the appropriate medical treatment for plaintiff's HCV. As noted above, a difference of opinion is insufficient to demonstrate a civil rights violation. In order to defeat summary judgment, plaintiff must demonstrate that Dr. Borges' decision to defer HCV treatment was "medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health." Snow, 681 F.3d at 988. Plaintiff has failed to do so. Indeed, in light of the applicable CCHCS protocols, as well as Dr. Feinberg's medical opinion, it appears that plaintiff could not so demonstrate. Dr. Feinberg opined that in June of 2015 Dr. Borges

---

[5] Plaintiff's second amended complaint is not verified. (ECF No. 52.) Plaintiff's opposition includes a "verification," stating that he "read and considered the writing of this petition and believes all the matter cited herein is true and correct." (ECF No. 78 at 13.) But plaintiff's filing is not signed under penalty of perjury.

properly deferred HCV treatment because plaintiff was clinically stable with a low FIB 4 score and had normal liver function tests. (ECF No. 71-4 at 4.)

Similarly, plaintiff adduced no competent evidence demonstrating that the CCHCS protocols were outdated, not applicable, or inappropriately applied.

As noted by defendant, it also appears plaintiff abandoned his claim that Dr. Borges prescribed interferon to plaintiff because in his opposition plaintiff conceded no interferon was prescribed. (ECF No. 78 at 11; UDF 22-23.)

Plaintiff's opposition fails to demonstrate that there is a material dispute of fact precluding summary judgment. (ECF No. 78.)[6] A fair reading of Dr. Jeu's note in plaintiff's November 17, 2015 medical record is that Dr. Borges told plaintiff that plaintiff is not qualified for the treatment. (ECF No. 71-3 at 57.) Such reading is further confirmed by Dr. Borges' declaration stating that because plaintiff's FIB 4 score was 1.37, it was appropriate to defer treatment for plaintiff's HCV. (ECF No. 71-5 at 2.)

In his opposition, plaintiff makes broad and conclusory statements that he contracted HCV while in prison, has had HCV for twenty years, and that "CDCR-Medical Facility has refused to care and treat, or . . . disregarded the medical care and treatment for [plaintiff's HCV]." (ECF No. 3.) Plaintiff provides no evidence in support.[7] Moreover, that plaintiff contracted HCV while in prison some twenty years ago is not at issue in this proceeding. In addition, defendant provided medical records demonstrating that plaintiff received medical care during the time frame relevant herein. (ECF No. 71-3 at 40, 43, 66-51, 54-58, 61, 64-67.) As discussed above, defendant Dr. Borges medically evaluated plaintiff and determined that plaintiff did not qualify for HCV treatment in June 2015 under CCHCS protocols at that time.

---

[6] Plaintiff re-submitted his opposition because his earlier opposition was missing page 12. But plaintiff's exhibits to his opposition are appended to his earlier opposition. (ECF No. 72 at 13-46.) He also previously submitted exhibits in support of his original complaint. (ECF No. 33.)

[7] Plaintiff appends as an exhibit defendant's Statement of Undisputed Facts, and cites to No. 7, which states: "Plaintiff has had Hepatitis C for over twenty years." (ECF No. 72 at 33.) As evidence of such statement, defendant relied on plaintiff's verified statement included in his original complaint. (ECF No. 1 at 3.)

Finally, plaintiff states that he no longer has HCV, and contends that he was provided Harvoni in 2018, "as a direct result" of filing this action. (ECF No. 78 at 12.)[8] However, even assuming, arguendo, that plaintiff was later prescribed and successfully treated with Harvoni for plaintiff's HCV, such subsequent treatment does not establish that defendant Dr. Borges was deliberately indifferent in failing to earlier prescribe Harvoni in June of 2015.

For all of the above reasons, the undersigned finds that defendant Dr. Borges is entitled to summary judgment. See, e.g., Gibson v. Vanjani, 2018 WL 4053458, at *6-11 (N.D. Cal. Aug. 24, 2018) (finding prisoner failed to raise a genuine dispute of material fact as to whether defendants were deliberately indifferent to Gibson's Hepatitis C disease), aff'd, 790 F. App'x 116 (9th Cir. 2020); King v. Calderwood, 2016 WL 4771065, at *5-6 (D. Nev. 2016) (granting summary judgment for defendants on prisoner's Eighth Amendment claim that he should have been provided Harvoni; medical director rejected request for treatment using standard formula to determine amount of liver damage and, based on that score, determined that prisoner was not exhibiting symptoms of decreased liver function notwithstanding prisoner's evidence that he had been experiencing painful symptoms and notwithstanding recommendation by one doctor that he receive HCV treatment); Fitch v. Blades, 2016 WL 8118192, at *7 (D. Idaho 2016) (recommending granting motion for summary judgment in defendant's favor on claim that defendants refused HCV treatment; "the medical records indicate Dr. Young made a deliberate, careful judgment about the course of plaintiff's treatment based upon the severity of plaintiff's disease, mental health issues, and likelihood of compliance"), adopted, 2017 WL 411203 (D. Idaho 2017).

////

////

---

[8] Plaintiff provided medical records confirming that after receiving Harvoni for 12 weeks, from May 4, 2018, to July 27, 2018, HCV is no longer detectable. (ECF No. 76 at 2-4 (medical records dated November 2, 2018, and March 12, 2019).) Plaintiff asks the court to take judicial notice of such medical records. (ECF No. 76 at 1.) A federal court may take judicial notice of adjudicative facts. Fed. R. Evid. 201(a)-(c). However, because the unauthenticated medical records are not properly subject to judicial notice under Federal Rule of Evidence 201, plaintiff's request is denied. Fed. R. Evid. 201(b).

## VII. Qualified Immunity

The undersigned finds that plaintiff has not established an Eighth Amendment violation, and therefore need not address the issue of qualified immunity.

## VIII. Motion to Strike Sur-reply

On December 12, 2019, plaintiff filed a document styled, "Opposition to Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment." (ECF No. 77.) On January 30, 2020, defendant filed a motion to strike plaintiff's sur-reply. (ECF No. 79.)

The Local Rules do not authorize the routine filing of a sur-reply. Nevertheless, when a party has raised new arguments or presented new evidence in a reply to an opposition, the court may permit the other party to counter the new arguments or evidence. El Pollo Loco v. Hashim, 316 F.3d 1032, 1040-41 (9th Cir. 2003). Here, defendant's reply addressed the arguments in plaintiff's opposition; it raised no new theories. Moreover, plaintiff did not seek leave to file a sur-reply, and his arguments therein do not impact the court's analysis. For these reasons, plaintiff's sur-reply is stricken.

## IX. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion to strike (ECF No. 79) is granted;

2. Plaintiff's sur-reply (ECF No. 77) is stricken; and

3. Plaintiff's request for judicial notice (ECF No. 76) is denied.

IT IS RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 71) be granted; and

2. This action be terminated.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **twenty-one** days after service of the objections. The

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 13, 2020

/s/ Kendall J. Newman
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

bivi0389.msj